TRENTON NAT. BANK. Ex parte. See Case No. 14,169.

TREVITT (BURKE v.). See Case No. 2,163.

## Case No. 14,170.

### The TRIAL.

[1 Blatchf. & H. 94] [1]

District Court, S. D. New York. May, 1830.

**WITNESS — COMPETENCY — INTEREST — SEAMEN — WAGES—VESSEL ABOUT TO PROCEED TO SEA —SHIPPING ARTICLES—FEES.**

1. In a suit in rem for seamen's wages, the master is a competent witness for the libellant, though he may have executed a bill of sale of the vessel to the claimant.

[Cited in Patten v. Darling, Case No. 10,812.]

2. The testimony of the master in such a case is, in the absence of the shipping articles, sufficient of itself to establish the time of each seaman's service, and the amount of wages due.

3. Under the 6th section of the act of July 20, 1790 (1 Stat. 133), in order that admiralty process may issue within ten days after the arrival of the vessel, it is sufficient to show a reasonable ground of belief that the vessel is about to proceed to sea within the ten days.

4. The clerk's report, in matters referred to him, should state facts and conclusions, and not detail the evidence at length.

5. A neglect, at the trial, to object to the competency of evidence, is a waiver of the right to object to the same evidence on a subsequent reference to the clerk.

6. The right of a seaman to his wages depends on the service, and not on the shipping articles, and he is not obliged to call for them in order to establish his claim to wages, though he may do so.

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

7. If the state court compensates services similar to those performed by a marshal, although not performed there by a like officer, the marshal is entitled to the same compensation.

[Cited in U. S. v. Three Hundred Barrels of Alcohol, Case No. 16,509. Re Lowenstein, Id. 8,572.]

8. The same fees are allowed to officers in this court, as in the supreme court of the state, without regard to the source of the power of the state court—whether customary or statutory.

9. This court allows a reasonable compensation to its officers for services not enumerated in the fee-bill.

This was a libel in rem for wages, by Green, mate, and Anderson, steward, of the schooner Trial. Green had shipped in March, and Anderson in June. The schooner arrived in New-York on the 6th of August, the libellants were discharged on the 10th, their wages being unpaid, and this libel was filed on the 15th.

The claim and answer of Moses Davis and Martin Wood alleged, that on the 10th of August they became bona fide purchasers of the schooner, from Thomas Mister, master and owner, for $850, without notice of the libellants' demands, and they produced a bill of sale from him, with covenants of warranty and against incumbrances. They also denied that the schooner was about to proceed to sea before the end of ten days next after the delivery of her cargo, and alleged that the libellants had not proceeded according to the form of the statute, to recover their wages. The statute referred to was the 6th section of the act of congress of July 20th, 1790 (1 Stat. 133), which provides, that if the seamen's wages are not paid within ten days after the voyage is ended and the cargo is discharged, the master may be summoned before the proper magistrate to show cause why process should not issue against the vessel, unless the vessel shall be about to proceed to sea before the end of the ten days next after the delivery of her cargo, in which case the seamen shall be entitled to immediate process out of a court of admiralty.

The libellants put in as evidence the deposition of the master, Thomas Mister, and their own several depositions, each for the other. Objections were taken to the competency of all the witnesses. To prove that the vessel was about to proceed to sea before the end of the ten days mentioned in the statute, it was shown that on the day after the sale to the claimants she was removed from the East river some distance up the North river. Morris, a witness for the claimants, testified, on cross-examination, that the vessel was removed to keep her out of the way of her former captain and crew; that the claimant thought of taking her to Philadelphia; and that she might have been got ready for sea in twenty-four hours. There was also evidence going to show that the purchase by the claimants was fraudulent.

Edwin Burr, for libellants.

George Sullivan, for claimants.

BETTS, District Judge. The objections to the competency of the witnesses upon whose evidence the case rests, will be first considered. In relation to the master, the general position is first taken, that a master cannot be a witness in behalf of seamen in a libel for wages, because he is one of the parties ultimately responsible to the seamen for their wages, and is thus interested to throw upon the vessel or her owners a charge which he might otherwise have to bear himself, and will be enabled to discharge his liability by his own testimony. Cases are referred to, decided by Judge Peters, in which the master was considered to be an incompetent witness in suits in rem by mariners for their wages. Jones v. The Phœnix [Case No. 7,489]; Malone v. Bell [Id. 8,994]; Atkyns v. Burrows [Id. 618]. The reasoning of the court is certainly expressed with great latitude in those cases, and it would seem to have been the impression of that learned judge, that a master could not be received as a witness in behalf of a seaman. In the cases referred to, however, the master was produced on the part of the owner against the mariner; and there is no doubt force in the suggestion, that under such circumstances the master stands interested, if not in a pecuniary point of view, at least by strong bias of mind, to defeat the action; though I am persuaded the weight of authority is against the conclusion of the court, even upon that point (The Lady Ann, Edw. Adm. 235), unless where he is called on to justify an act on board, for which, if unjustified, he would himself be responsible (The Exeter, 2 C. Rob. Adm. 261). However that may be, the objection does not apply where the master is offered as a witness by the seaman. It is difficult to perceive how the interest of the master can be promoted by the recovery of the mariner against the ship. The freight is the fund which ought to discharge wages, and that appropriately comes to the hands of the master, who will be liable to account to the owner for the freight and earnings of the vessel; but, in point of interest, it must be immaterial to him whether he pays the freight to the owner or to the sailor. The proofs do not show that there were no such earnings in this case, out of which these demands could have been satisfied; and the court cannot intend that none existed. But, admitting that the master had no means of the owner with which he could have paid the wages, and that, accordingly, he may become responsible for them personally, if they cannot be obtained out of the vessel by this suit, that circumstance does not create the degree of interest which disqualifies him from being a witness. The interest is not direct and necessarily dependent upon the decree rendered in the cause, but consequential and contingent—that is, the master may be made ultimately liable for the wages, if they are not satisfied by this decree or by the owner, but the decree could not be en-

forced in personam against the master or the owner, nor would it furnish a foundation for an action against either. The only way, therefore, in which the master could be benefited, would be to have the claim certainly satisfied by the vessel. Should the wages yet remain unpaid, his responsibility pro tanto to the seamen would be neither discharged nor lessened by means of the decree. He may testify under a strong bias, which ought to be regarded in estimating his credit; but there is not that pecuniary and direct interest against the claimants which renders him an incompetent witness for the libellants. Indeed, his interest and bias would rather seem to be united in defeating the action, and in proving that the mariners had no existing claim against the vessel, the owners or himself.

The further objection to the competency of the master is, that he executed a bill of sale of the vessel to the claimants, with covenants of warranty and against incumbrances. It is accordingly insisted, that he cannot be permitted to impeach the title he conveyed, or to interrupt the peaceable enjoyment of the property in his vendees. It is supposed, that if his testimony subjects the vessel to a sale by force of this lien which existed at the time of the transfer, he will have violated his covenants, and indeed, have committed a direct fraud, and stand exposed to an action by his grantees for the consequences. It is a sufficient reply to this objection, and to the reasoning in support of it, to observe, that the witness is called to testify by those whom it would be his more immediate interest, under such a state of things, to defeat. The claimants cannot object that the witness called by the libellants is strongly bound to support the defence and defeat the action. These arguments might prevent the claimants from calling their grantor or vendor, without giving him a release; but a party may always incur the hazard of taking the evidence of one who stands opposed to him in interest, and enlisted on the side of his adversary. The objections to the competency of the master cannot, therefore, be sustained. His testimony being sufficient to support the libellants' action, without the aid of their personal evidence, the case does not require a decision of the objection raised to their competency to testify for each other.

The claimants, in addition to their answer and claim, interpose a plea that the suit was instituted within less than ten days after the arrival of the vessel in this port, that she was not about to proceed to sea within that time, and that the libellants did not, in pursuance of the statute, summon the master to show cause why process should not be issued against the vessel. A general replication is filed to this plea.

The evidence of the witness, Morris, is abundantly sufficient to establish, prima facie, the only material point at issue between these parties under the plea, namely, that the vessel was about to proceed to sea before the end of ten days after her voyage was ended at this port. Accordingly, the libellants were entitled to sue immediately in admiralty, as their case came within the express exception of the statute, which prescribes, in ordinary cases, a different mode of procedure. To avail themselves of the exception, sailors are not bound to prove positively that the vessel was about to proceed to sea, before they can be remitted to their right of action under the general maritime law. This degree of evidence it may never be in their power to produce. The fact is commonly known only to the owners or to the master, the parties directly interested in concealing it. All, then, that can be exacted of the seamen is, to show a reasonable ground of belief that the vessel is about to go to sea. This may be gathered from concomitant circumstances as well as direct proofs.

Under the general maritime law, sailors could enforce their claims by an action as soon as the voyage was ended. The act of congress was not designed to abridge the rights or remedies of sailors; but only, in cases free from all hazard to them, to have the owner and master notified that the wages must be paid, before the seamen can arrest the vessel, to afford a reasonable period to collect the freight and pay the wages without suit. The present case shows that there was reasonable cause to believe that a summons under the statute would have been nugatory and inefficacious towards obtaining the wages due, and that, on the contrary, it would have been the means of hastening the departure of the vessel out of the jurisdiction of the court before proceedings could have been perfected for her arrest.

The right of action being established, and it appearing, prima facie, that wages are due to the libellants, I shall decree preliminarily in their favor, and order a reference to the clerk to ascertain and report to the court the amounts due. On the reference, either party may produce further proofs in support or discharge of the demands.

At a subsequent day (February 16th, 1830) the clerk, at the request of the counsel for both parties, reported the evidence given before him, and the exceptions taken, on the part of the claimants, to the proofs, and referred the matters of those exceptions to the court for decision. The same objections were taken as before, and a further one, that the libellants had not produced the shipping articles, they being the best evidence of the contract of hiring.

BETTS, District Judge. This is not conformable to the regular course of practice. The duty of the clerk is not to report the evidence, but the facts, and his conclusions thereon. Either party may have relief

against errors in the report, by taking exceptions to it, and thus bring under review the whole ground of the clerk's decisions. But, as the present mode of presenting the question seems to have been adopted in pursuance of the wishes of the parties, and as the whole matter may be as fairly and with less expense considered in this form, I shall not send the report back to have it framed according to the course of practice, but shall consider the points in the shape in which they are submitted by the parties.

The claimants' first exception is, that the libellants cannot substantiate their claim to wages without producing the shipping articles. The first and sixth sections of the act of congress of July 20th, 1790 (1 Stat. 131, 133, 134), require a shipping agreement to be executed between the master and the seamen, before proceeding on a voyage, and provide, that in case of dispute, it shall be incumbent on the master to produce the agreement, if required, otherwise its contents may be stated, and proof of the contrary shall lie on the master. This prosecution is under the general maritime law, and not upon the provisions of any statute, and the practice of courts of admiralty is to govern the proceedings, when not regulated by positive law. The statute referred to, so far as it may be deemed to be declaratory of the general law, or to act upon the shipping contract, must be the rule of decision in the cause, whether invoked or not by either party. The master, under whom the libellants contracted, was called and examined by them as a witness. He stated the terms of the contract with the libellants, but was not required by either party to produce the shipping articles. On the hearing, no exception was taken to the competency of this evidence, and no offer to produce the articles, nor any demand that the libellants should do so, was made by the claimants. This would be deemed to be a waiver by the claimants of this species of proof, if they had a right to exact it from the libellants. If allowed to raise the objection, they should have done so at the trial, when the libellants might have been able to obtain the articles, or to show good reasons for not producing them. A party cannot be permitted to go to a final hearing without objecting to the competency of evidence, and to raise an objection to the proofs on a reference before the clerk. This would be a surprise upon his adversary, and would enable the party making the objection, to secure inequitable advantages thereby.

But no authority has been produced on the part of the claimants, and I am not aware of any doctrine of the law, which requires from the libellants the production of the shipping articles. In general acceptation, the shipping articles and log-book accompany the vessel as a part of her muniments. A change of owners or of master

would not divest the vessel of the possession of those documents. In judgment of law, they are in the custody of the claimants. The foundation of the suit for wages is the hiring and service, and not the written contract; and, therefore, it is not required by the course of the court, that the seaman should aver how the contract was made. That is matter of defence. So, also, if the articles show either that no right of action had accrued when the suit was instituted, or supply matter in bar of it, that must be made to appear by the claimants. And the rule seems to be clear, that in all cases where it is necessary that the written agreement with the seaman should be before the court, the obligation is cast upon the master or owners to produce it. The George, 1 Hagg. Adm. 168, note; Abb. Shipp. 464.

If the articles may be supposed to remain with the former master, it was the privilege, but not the duty, of the mariners to require their production before the clerk, and it was equally in the power of the claimants to call them into court. It appears, in fact, by the clerk's report, that when the objection was raised, the libellants required the production of the articles, and the claimants answered, that they should not have been asked of them, but of the master, who was the libellants' witness. The objection on this point is overruled. A decree must accordingly be entered, that after satisfying the costs out of the proceeds of the sale of the vessel, the libellants be paid their wages as reported due by the clerk.

A motion was subsequently (May 20th, 1830) made for the re-taxation of the marshal's bill of costs and disbursements. The following bill had been presented and taxed ex parte:

| | | |
|---|---|---|
| 1. Attachment, notices and proclamations ................... | $ 17 | 90 |
| 2. Marshal's custody fee (102 days).. | 153 | 00 |
| 3. Keeper's fee (102 days).......... | 102 | 00 |
| 4. Serving vend. exp. and return.... | 2 | 25 |
| 5. Dr. and copy inventory.......... | 1 | 00 |
| 6. Wharfage ..................... | 40 | 31 |
| 7. Storage of sails................. | 5 | 00 |
| 8. Padlocks and fenders............ | 2 | 00 |
| 9. For transporting schooner from North Moore-st. to Whitehall... | 10 | 00 |
| 10. Labor unbending sails, pumps, &c. | 3 | 00 |
| 11. Storage of sails at Whitehall..... | 3 | 00 |
| 12. Dr. and copy costs and att'g on taxation ..................... | 1 | 25 |
| Commissions on $420.......... | 10 | 50 |
| | $351 | 21 |

BETTS, District Judge. The legality of most of the items taxed is now formally questioned, and it becomes necessary to decide upon the propriety of the charges, as well for the disposal of this particular case, as to settle the rate of allowance as a guide in future practice. The items objected to will be most conveniently considered under two heads—for services and for disbursements—Nos. 1, 2, 4, 5 and 12 falling under

the former, and Nos. 3, 6, 7, 8, 9, 10 and 11 under the latter.

1. It is urged by counsel, that a marshal can receive no emolument for the execution of the duties of his office, unless it is given specifically by act of congress. And it is further contended, that if, in the absence of all legislation upon the subject, a right to a reasonable compensation for services might be implied and be awarded by the court; yet, inasmuch as the act of February 28th, 1799 (1 Stat. 624), has established fees to the marshal for various descriptions of service, it clearly imports that congress intended that he should receive pay in the way of fees alone, and then only in the particulars designated in the act. There would be force in this reasoning, if the provisions of the act went no further than to arrange a tariff of fees. But, after designating the specific fees the marshal shall be entitled to, a broader provision is added to the section, to this effect: "For all other services not herein enumerated, except as shall be hereafter provided, such fees and compensations as are allowed in the supreme court of the state where such services are rendered."

The intention of congress to conform the proceedings in the courts of the United States to those of the courts in the particular state in which their functions were to be exercised, is most manifest throughout the organization of the judiciary system. It was obvious that the diversities of practice in the state courts would call for the performance of duties by the marshals in execution of process of the United States, which could not be appropriately compensated by any specific rate of fees. Congress, therefore, in this general manner, incorporated the customs of the supreme court of each state into the fee bill of the courts of the United States. It was supposed that in this mode the varying services made necessary by the course of proceedings in different states could be adequately provided for, without leaving the matter of compensation wholly at the discretion of the court. In most instances this will be found to be the case; yet, in others, as will appear from the bill of costs now under consideration, the court will find no fixed rules to guide its allowances, but must determine them by analogy to the modes of compensation authorized in the state. Bearing in view these general considerations, I shall proceed to discuss the particular items objected to.

Item No. 1 embraces $15 of disputed charges, $2 90 only being allowed by statute for the service of an attachment and for three proclamations. The charge should have specified in detail the particulars of which it was composed, that the parties might be prepared to investigate their propriety. If the charge of "notices" in this item means the draft and copy of the notice of monition prepared for the printer, it cannot be allowed. This service, under our practice, is performed by the clerk, and not by the marshal, and is included in the taxation of the clerk's costs. The marshal is not furnished with the means of doing it with accuracy and precision. The notice rehearses the substance of the libel, and, as this must be on file before the warrant of attachment is made out, it is the most convenient course of practice, to require the clerk to prepare, at the time the writ issues, the proper notices, founded upon the libel and process, and corresponding with them.

If, however, it is made to appear that the marshal has necessarily furnished any further written copies of the notice, he may, in my opinion, be compensated therefor, under the clause of the act referred to, at the rate paid attorneys, &c., for copies. The statute directs the compensation of the marshal for certain services to be governed by the allowance made by the supreme court of the state. But it does not require that the like services shall be performed in the state by a sheriff or other officer corresponding to the marshal. He will be entitled to the allowance, though, according to the state practice, the services are rendered by an attorney or clerk. In my opinion, the fee for serving the attachment does not cover this service or disbursement. The attachment is served when the property is seized. The fee is then earned, and, strictly speaking, the duty of the marshal in regard to the subject is all performed. When the proceedings are in rem, the arrest of the property and the citation of those in possession are simultaneous acts. 2 Browne, Civ. & Adm. Law, 178, 179. Our practice, however, requires ulterior steps to be taken, and notice to be given by publication. This is not a part of the duty of the marshal in perfecting the arrest, and might, with equal fitness, have been assigned to the proctor, of the propriety of the allowance of the fee to whom no doubt could exist.

Item No. 2 is wholly objected to. No such item is inserted in the act of congress fixing the marshal's compensation, and, as a previous statute had made provision for the service when the vessel had been seized by any officer of the revenue, it is argued that congress did not mean to give any other fees for it in private suits, than those for the arrest, and for poundage in case of sale under execution. There would seem to be a manifest incongruity in such a regulation, as the hazard and responsibility upon the marshal are the same in both cases; and it would be strange if he could, in addition to fees for serving the attachment, be compensated for the custody of a vessel pending a public prosecution for a violation of the revenue laws, and yet be obliged to bear all the risk himself when the action against her is in behalf of individuals. This is not the usual policy of the law. The government rarely imposes upon itself a heavier burthen of costs than is to be borne by private suit-

ors; and it would require some unequivocal indication of such an intent, to induce the court to conclude that congress designed a discrimination of that kind in these cases.

The safe keeping of the vessel is wholly extrinsic and independent of the service of the attachment. The execution of the process transfers the possession to the marshal. But, whether the vessel is to remain, during the litigation, at his risk, or at that of the parties in interest, must depend upon the law of the court in which the proceedings are had. If the arrest of the vessel were regarded merely as a citation of the parties in interest, there could be no foundation for a claim to custody fees, because the responsibility of the officer would cease on the due execution of the summons. That, however, is not the course of admiralty courts in this country. They continue the liability of the marshal for the safe keeping of the vessel until she is bonded, or to final decree. There is, accordingly, the most manifest propriety in awarding compensation on this account, if the service can be considered as embraced within the provision adverted to. To give application to that provision, however, it is not only necessary that the service should in itself be of a character meriting compensation, but also that it should be one that would, if rendered by a sheriff, have a compensation allowed for it by the supreme court of the state.

On examining the laws of the state in force when the act of congress was passed, or when this vessel was seized, it does not appear that fees were provided for services of this description. It is not consonant to the usual course of practice of the state courts to arrest property in the first instance; and, where it was allowed in special cases, the law was either silent as to the compensation of the sheriff, or referred the matter to the discretion of the judge who authorized the proceedings. This was so with regard to attachments against the property of absent or absconding debtors. 2 Rev. Laws N. Y. p. 20. But the act empowering material men, &c., to arrest vessels, made no provision on the subject. The recent Revised Statutes have supplied the omission; but the services in this case were performed before those statutes went into operation, even if they could properly affect the case, and our inquiries must be guided by the rule provided by the act of congress of 1799. That act ought not, perhaps, to be understood as referring to the statutes of the state, except in so far as they furnish rules to the respective supreme courts. The fees allowed in the supreme court of a state, without regard to the source of its power, supply the rule of allowance in the courts of the United States.

The remarks heretofore offered upon item No. 1, show that, in the estimation of the court, if the services performed by a marshal are compensated by the state court, though not performed there by a sheriff, the marshal is entitled to that compensation in this court. The court would award him the compensation for duties imposed upon him by its own system of procedure, though in the state courts a constable might be charged with the like service, and might receive the fees. Neither, in my opinion, is the act to be limited in its provisions to the case of services identically the same in the two courts. The plain principle of the act is, to adopt the state mode of compensation, in certain instances, and apply it to services rendered by the marshal. If the state court employs no other means for compensating its officers than by applying to the case the table of fees for enumerated services, and leaves those cases unrewarded which do not fall within the tariff, this court would undoubtedly be compelled also to deny to the marshal compensation in cases not expressly provided for by the legislation of congress or of the state. But, when the supreme court of the state grants an appropriate compensation to all its officers for services imposed on them by its mandate, or by the course of its practice, though no provision in that behalf is made by statute, the act of congress of 1799 ought to be construed to embrace the same principle, and to afford this court a like means of compensating its officers. It would thus follow, that for duties necessarily devolved upon a marshal, the court might secure him a compensation, though no services precisely like them were performed by state officers. The principle is indisputably established in the state court, that when the law is silent as to charges for particular services, the court will allow the officer what is deemed a reasonable compensation (Smith v. Birdsall, 9 Johns. 328; Bryan v. Seely, 13 Johns. 123); and this is done under the incidental powers of the court, in cases where no discretion is conferred by statute. This court feels itself supported by the act of congress, in exercising that power in cases like the present. A reasonable allowance will accordingly be made to the marshal as a custody fee in this cause.

After the recognition of this rule, the next consideration is, the manner in which it is to be carried into execution. It is supposed that the court ought to institute an inquiry into the circumstances of each case, and determine judicially the compensation, upon the proofs before it. The tendency of leaving the subject thus indeterminate, would be to lead parties into discussions and tedious investigations in the adjustment of every charge, and, in the end, the most satisfactory mode of disposing of the controversies would be to conform to some common rate of allowance. This rate should be a moderate but fair average, neither giving the marshal the ample emolument which some cases might justify, nor stinting him to the limited allowance which it might be convenient for all to pay.

The 4th section of the act of May 8, 1792

(1 Stat. 277), provides, that the marshal shall have the custody of all vessels and goods seized by any officer of the revenue, and shall be allowed such compensation therefor as the court may judge reasonable. The practice under this law, from the earliest organization of this court, is understood to have been to allow the marshal, on the seizure of a vessel, a custody fee of $1 50 per day. I have adopted that as a reasonable allowance, since I have presided in the court; and, as it appeared to me manifestly proper that one rule of compensation should be observed in cases alike in all respects, I have applied that rule in private suits also. This, in some instances, may afford a large compensation, but in others it will be exceedingly trivial, compared with the hazard and responsibility incurred by the marshal. I shall not depart from the general rate in this instance, and shall tax the custody fee at $1 50 per day. There can rarely be occasion for complaint because of this charge. The claimant can always relieve his property by bonding it, and the libellant can prevent the accumulating costs from destroying his remedy upon the property, by speeding his prosecution. The procedure upon the admiralty side of the court may be so accelerated that a diligent suitor need never suffer by delays. A very few days will be sufficient for him to obtain his final decree, if he chooses to urge it.

Item No. 5 cannot be allowed. An inventory for the sale of property under execution is not necessarily prepared by the marshal. If any of the parties consider it advantageous to have one, it must be provided at the expense of those who desire it.

Item No. 12 will be allowed. The marshal is compelled to have his costs taxed, and he must accordingly draw out a bill and attend on taxation. He may also charge for a copy, when the proceedings in the cause have rendered it necessary that he should serve a copy on either party. This will hereafter always be so. A general rule will be promulgated, that the marshal, in all cases, serve a copy of his costs on the proctors of the parties, with notice of taxation.

2. The decision of the supreme court of this state, in Smith v. Birdsall, 9 Johns. 328, shows that an officer will be reimbursed his expenditures incurred in performing duties imposed on him by authority of law, when no general compensation is provided which must be held to be intended to cover all charges. It is, however, contended, that if these views are correct in general, and would justify the payment of the charges of material men, wharfage, &c., they ought not to cover a claim for publishing notice of the monition and for a keeper's fee.

Item No. 1 embraces the printer's bill, and, as it has already been shown that this publication was not the service of the attachment, nor a duty necessarily to be performed before the process could be said to be executed, but was outside of that duty, and a matter regulated by the practice of the court, it follows that the charge is not embraced in the enumerated fees, and should now be allowed as a disbursement. The bill, however, ought to specify how much was paid, and the proper vouchers should be produced to support the charge.

Item No. 3 falls properly under the head of disbursements. The $1 50 per day allowed the marshal will not be a reasonable compensation for his risk and responsibility, and be also sufficient to provide a keeper, when the safety of the property requires that one should be actually in charge of it. A moderate compensation will therefore be allowed, where a keeper is necessarily employed, but great caution will be observed that this charge shall not lead to abuses. It is in no way to be a masked fee to the marshal or his officers. It is passed as an expenditure, and, before it is allowed, it must be made to appear satisfactorily to the court that a prudent precaution in regard to the interests of all concerned in the property justified the marshal in placing a keeper over it, that the keeper actually continued in charge of it for the time specified, and that the price paid was no more than reasonable for the services rendered.

The other charges for expenditures and disbursements will be allowed on proof, if required by the parties in interest, that the services or supplies charged were authorized by the marshal, that in his judgment they were necessary for the safety of the vessel, and that the charges are reasonable and have been actually paid as charged. The proof may be upon the affidavit of the marshal or other deposition, at his option.

A re-taxation of the bill of costs is ordered in conformity to these principles.